**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KALPESH SOLANKI, et al.,

                Plaintiffs,

      v.

COUNTY OF LOS ANGELES, et al.,

                Defendants.

Case No. CV 16-3288 DMG (GJSx)

**ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [33]**

This matter is before the Court on a motion for summary judgment filed by Defendants Michelle Lecavalier, Tina Grigorian, and Claude Beeks. [Doc. # 33.] For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.

**I.**

**PROCEDURAL BACKGROUND**

On July 29, 2016, Plaintiffs Kalpesh Solanki and Mill Creek Investments, LLC filed a First Amended Complaint ("FAC") against Defendants County of Los Angeles, Michelle Lecavalier, Tina Grigorian, and Claude Beeks for violations of 42 U.S.C.

§ 1983, 42 U.S.C. § 1982, and 42 U.S.C. § 3604(b).[1]  [Doc. # 13.]  On April 5, 2017, the Court dismissed all of the FAC's causes of action against Defendant County of Los Angeles, and all of the FAC's causes of action against Defendants Lecavalier, Grigorian, and Beeks except for claims under 42 U.S.C. § 1983 for violations of the First and Fourth Amendments.  *See* Order re Defs.' Mot. to Dismiss at 1, 10 [Doc. # 21].[2]   On May 17, 2017, Defendants filed an Answer to the FAC.  [Doc. # 23.]

On March 23, 2018, Defendants Lecavalier, Grigorian, and Beeks filed the instant motion for summary judgment ("MSJ").  [Doc. # 33.]  The MSJ has since been fully briefed.  [Doc. ## 43, 45.]

## II.

## FACTUAL BACKGROUND[3]

Plaintiff Solanki is the managing member and owner of Plaintiff Mill Creek Investments, LLC.  Solanki Decl. at ¶¶ 1–2 [Doc. # 39].  At all times relevant to this action, Plaintiff Mill Creek Investments, LLC was the legal owner and operator of a residential hotel called the "Executive Inn," which is located in Gardena, California.[4]  *See id.* at ¶¶ 1, 3.  Defendants Beeks and Grigorian are health inspectors for the County of Los Angeles Department of Public Health, and Defendant Lecavalier is their supervisor.  PSGD at ¶¶ 2–4, 7.  In connection with their duties, Defendants Beeks and Grigorian conducted inspections of the Executive Inn.  *Id.* at ¶¶ 5–6.

Plaintiffs allege that Beeks conducted three inspections of the Executive Inn in November 2015 without consent or a search warrant, and that Grigorian performed at

---

[1] The FAC also asserted claims on behalf of Executive Capital Investments, LLC.  *See* FAC at 1–2 [Doc. # 13].  Pursuant to the parties' stipulation, the Court has dismissed Executive Capital Investments, LLC's claims with prejudice.  [Doc. # 35.]

[2] With the exception of citations to deposition testimony, all page references herein are to page numbers inserted by the CM/ECF system.

[3] Unless otherwise indicated, the facts recited in this section are uncontroverted.

[4] In April 2017, Plaintiff Mill Creek Investments, LLC sold the Executive Inn.  Pls.' Statement of Gen. Disputes ("PSGD") at ¶ 1 [Doc. # 42].

least five inspections of the Executive Inn (including one in February 2016 and another in March 2016) without consent or a search warrant. *See* Solanki Decl. at ¶¶ 51–55 (attesting that between November 2015 and February 19, 2016, Grigorian inspected the Executive Inn at least three times) [Doc. # 39]; PSGD at ¶ 27; Defs.' Statement of Uncontroverted Facts ("DSUF") at ¶ 27 [Doc. # 33-1].[5]    Lecavalier did not personally conduct any inspections of the Executive Inn. PSGD at ¶ 40. Plaintiffs allege that during several of the inspections, Beeks or Grigorian demanded to inspect locked rooms, some of which were unoccupied. *See* Solanki Decl. at ¶¶ 24, 52–53, 68, 71, 79 [Doc. # 39]. Further, official inspection reports indicate that some of the inspections were initiated in response to guest complaints concerning the property. *See* PSGD at ¶ 38.

On February 19, 2016, Solanki met with Lecavalier for an Office Hearing concerning the Executive Inn's alleged violations of certain county ordinances. *See* Solanki Decl. at ¶ 50 [Doc. # 39]; Lecavalier Decl. at ¶ 5 [Doc. # 33-3]. At the Office Hearing, Lecavalier stated that if Solanki refused to allow her personnel to conduct inspections, then Solanki would be interfering with the duties of a health inspector and a criminal complaint would be filed against him. *See* Solanki Decl. at ¶ 55 [Doc. # 39]. Lecavalier told Solanki that if the alleged violations were not corrected in a timely manner, the case could be referred to the Franchise Tax Board. *See id.* at ¶ 56; Lecavalier Decl. at ¶ 5 [Doc. # 33-3]. Lecavalier also stated that Solanki's failure to timely correct these purported violations would result in the filing of a criminal complaint against him. *See* Solanki Decl. at ¶ 57 [Doc. # 39]. Lecavalier demanded that Solanki turn over pest control reports and a corrective action plan ("CAP") on how he would abate all open violations. *See* PSGD at ¶¶ 23–24.

---

[5] Although Plaintiffs allege that Beeks and Grigorian conducted an inspection on April 29, 2016, *see* PSGD at ¶ 27; DSUF at ¶ 27, Plaintiff Solanki concedes that his staff refused to allow Beeks and Grigorian to access the property on that date. *See* Solanki Decl. at ¶ 88 [Doc. # 39]. Further, even though Plaintiffs apparently aver that Beeks inspected the Executive Inn on November 23, 2015, *see* PSGD at ¶ 27, Solanki admitted during his deposition that Beeks did not inspect the property on that date because Solanki had asked him to leave. *See* Defs.' App'x of Exs., Ex. M at 60:18–25, 126:15–17 (Solanki Depo.) [Doc. # 33-2].

Additionally, Plaintiffs claim that on February 26, 2016, Solanki had a telephone conversation with Lecavalier in which he: (1) objected that Grigorian had conducted an inspection the prior day without a court order or a warrant, and (2) stated that he wanted to appeal Grigorian's inspection. *See* Solanki Decl. at ¶¶ 74–77 [Doc. # 39]. According to Plaintiffs, Lecavalier replied that if Solanki did not provide her with a CAP or if he appealed Grigorian's inspection, Lecavalier would refer him for criminal prosecution. *See id.* at ¶ 77. Defendants dispute this.

### III.

### LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

2007).  "Rather, it draws all inferences in the light most favorable to the nonmoving party."  *Id.*

## IV.

## DISCUSSION

Defendants contend that they are entitled to partial summary judgment because the undisputed material facts establish that they did not violate Plaintiffs' First and Fourth Amendment rights.[6]  MSJ at 14–15.

**A.   Plaintiffs' First Amendment Retaliation Claims**

To establish a First Amendment retaliation claim, a plaintiff must show:

(1) [that] he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

---

[6] Defendants also seek summary judgment on the ground that Plaintiffs cannot recover punitive damages from them for conduct committed in their official capacities.  *See* MSJ at 21.  Although the Court did not expressly dismiss Plaintiffs' claims against Defendants in their official capacities, it did dismiss their claims arising under *Monell v. New York City Department of Social Services*, 562 U.S. 29 (1978).  *See* Order re Defs.' Mot. to Dismiss at 10 [Doc. # 21].  Because Plaintiffs' official capacity claims cannot survive without their *Monell* allegations, the Court **GRANTS** summary judgment in favor of Defendants on any remaining claims against them in their official capacities.  *See Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991) (certain brackets omitted) (internal quotation marks omitted) ("A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself.  Thus, [a governmental officer can be] found liable in his official capacity *only if* policy or custom or a one-time decision by a governmentally authorized decisionmaker . . . played a part in the violation of federal law[.]") (emphasis added).  Further, although Defendants also contend that they are entitled to qualified immunity and are not personally liable for punitive damages, their arguments in that regard are wholly derivative of their assertion that they did not violate Plaintiffs' constitutional rights.  *See* MSJ at 14–15, 21–22; Reply at 2, 7–8.  The availability of punitive damages against Defendants sued in their individual capacity depends upon the viability of the underlying constitutional claim *and* the existence of facts from which a reasonable inference can be drawn as to Defendants' oppressive conduct, evil motive or intent, or their reckless or callous indifference to the constitutional rights of others, which will be discussed further below.  *See Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (footnote omitted). For the purposes of a First Amendment retaliation claim, the term "constitutionally protected activity" refers to protected speech. *See id.* at 543 n.1. "A message 'delivered by conduct that is *intended to be communicative* and that, in context, *would reasonably be understood by the viewer to be communicative*,' is symbolic speech that falls 'within the scope of the First and Fourteenth Amendments.'" *United States v. Swisher*, 811 F.3d 299, 311 (9th Cir. 2016) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984); *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (emphasis added).)

Plaintiffs contend that Lecavalier violated their First Amendment rights by threatening to criminally prosecute Solanki if: "(1) he interfered with the inspection of his property; . . . [(2)] he failed to provide a CAP[;] . . . [(3)] [he] attempted to appeal the inspections; and . . . [(4)] he failed to abate the alleged violations" of county ordinances. *See* Opp'n at 6–7. Items (1) and (4) are not protected speech. Therefore, the Court **GRANTS** summary judgment on Plaintiffs' First Amendment retaliation claim to the extent that it is predicated on items (1) and/or (4).

With respect to item (2), the parties dispute whether Lecavalier told Solanki that she would refer him for criminal prosecution if he did not provide a CAP. *Compare* Lecavalier Decl. at ¶ 7 (attesting that she "never told . . . Solanki that he would be referred for prosecution if he did not provide a [CAP]") [Doc. # 33-3], *with* Solanki Decl. at ¶¶ 55–59 (declaring that at the February 19, 2016 Office Hearing, Lecavalier impliedly threatened to prosecute Solanki if he did not submit a CAP) [Doc. # 39]. Even if Lecavalier made such a threat, however, it would not give rise to an actionable claim. Government officials are permitted to threaten prosecution in order to secure an accused's cooperation so long as such charges are supported by probable cause. *Cf. United States v. Paguio*, 114 F.3d 928, 930 (9th Cir. 1997) (citation omitted) (citing *United States v. Gardner*, 611 F.2d 770, 773 (9th Cir. 1980)) ("The government may indict, even if its motive is to get cooperation in another case, where the government has probable cause."). Plaintiffs do not allege, let alone point to evidence showing, that any

such threats to prosecute Solanki were not supported by probable cause. *Cf. Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) ("In a civil case under 42 U.S.C. § 1983, . . . the plaintiff carries the ultimate burden of establishing each element of his or her claim . . . ."). Accordingly, the Court **GRANTS** summary judgment on any First Amendment retaliation claim arising out of item (2).[7]

As for item (3), this Court previously concluded that if Lecavalier threatened to prosecute Solanki in response to his request for an appeal, then that misconduct would give rise to a First Amendment retaliation claim. *See* Order re Defs.' Mot. to Dismiss at 3–10 [Doc. # 21]; *cf. Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (emphasis in original) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)) ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. . . . '[T]he mere *threat* of harm can be an adverse action [supporting such a claim].'"). Defendants do not dispute that conclusion. Nonetheless, Lecavalier attests that she did not "threaten to prosecute . . . Solanki in response to a statement by [him] that he wished to appeal an inspector's report." *See* Lecavalier Decl. at ¶ 8 [Doc. # 33-3]. On the other hand, Solanki insists that during a February 26, 2016 telephone call, Lecavalier threatened to prosecute him if he appealed one of Grigorian's inspection reports. *See* Solanki Decl. at ¶¶ 74–77 [Doc. # 39]. This dispute gives rise to a triable issue of fact that cannot be resolved at the summary judgment stage. *Soremekun*, 509 F.3d at 984 ("In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence."). Defendants further argue that any retaliation claim arising out of this threat fails because

---

[7] It is unclear whether Plaintiffs' First Amendment retaliation claim also relies on an alleged threat to prosecute Solanki if he did not turn over pest control reports. *See* PSGD at ¶ 23 (Plaintiffs argue that Lecavalier "demanded" that Solanki produce such reports). Defendants also anticipated in their motion that Plaintiffs would argue that Lecavalier's purported demands for a CAP and other documents violated their Fourth Amendment rights. *See* MSJ at 20–21. To the extent Plaintiffs intended to raise any such claims, they fail for the reasons discussed in the paragraph above. Any Fourth Amendment claims based on demands for a CAP or documents also fail because that alleged conduct did not constitute a search or seizure.

Solanki attempted to appeal Grigorian's report after this telephone conversation occurred. *See* MSJ at 16; Reply at 3. Yet, the key inquiry is whether "*a person of ordinary firmness* [would be chilled] from continuing to engage in the protected activity[,]" and not whether *a particular plaintiff* was actually deterred from doing so. *See Blair*, 608 F.3d at 543 (emphasis added); *see also Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). Therefore, the Court **DENIES** Defendants' motion for summary judgment on this aspect of Plaintiffs' First Amendment retaliation claim as to Defendant Lecavalier.[8] The Court **GRANTS** the motion to the extent the retaliation claim is aimed at Defendants Grigorian and Beeks because there is no evidence in the record to support any inference that they engaged in retaliatory conduct, even when viewing the record in the light most favorable to Plaintiffs.

**B.    Plaintiffs' Fourth Amendment Claims**

Plaintiffs claim that Defendants violated their Fourth Amendment rights by allegedly searching locked areas of the Executive Inn "without proper consent or a warrant." *See* Opp'n at 5–6. The Fourth Amendment "protect[s] against intrusions into the private areas of a business"—*i.e.*, portions of the business that have been closed off to the public. *See Patel v. City of Montclair*, 798 F.3d 895, 899–900 (9th Cir. 2015) (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 309–10 (1978); *Camara v. Municipal Court of City & Cty. of S.F.*, 387 U.S. 523, 528–29 (1967); *See v. City of Seattle*, 387 U.S. 541, 543 (1967)). Accordingly, "except in certain carefully defined classes of acts, a search of [such] private property without proper consent is unreasonable unless it has been authorized by a valid search warrant." *See id.* at 899 (quoting *Camara*, 387 U.S. at 528–29).

---

[8] Plaintiffs deny Defendants' assertions that "[n]o actions or statements on the part of Tina Grigorian [or Claude Beeks] personally [led] Plaintiff Solanki not to file any appeals." *See* PSGD at ¶¶ 11–12. On this evidentiary record, however, Lecavalier is the only Defendant who allegedly threatened to prosecute Solanki after he requested an appeal of an inspector's report. *See* FAC at ¶¶ 16–17 [Doc. # 13]; Solanki Decl. at ¶¶ 74–78 [Doc. # 39].

Defendants contend that there is no genuine dispute that they had consent to inspect the Executive Inn because Solanki's deposition testimony "confirmed" that Beeks and Grigorian did not obtain "any unauthorized access" to the property. *See* MSJ at 18–19. They further argue that Solanki "confirmed" at his deposition that "at the remaining inspections [he] identified, the inspectors were asked to leave and did so without conducting an inspection . . . ." *See id.* at 19.

During Solanki's deposition, he answered "[n]o" when he was asked whether Beeks or Grigorian had "unauthorized access" to the property. *See* Defs.' App'x of Exs., Ex. M at 125:19–127:10 (Solanki Depo.) [Doc. # 33-2]. Yet, Solanki attests that on multiple occasions, Beeks and Grigorian "demanded" to inspect locked areas of the Executive Inn without a warrant.[9] *See* Solanki Decl. at ¶¶ 4, 23–26, 28–32, 52–53, 68, 70–72, 79 [Doc. # 79]. Solanki declares that Beeks' "rude attitude and *demand[s]* that [Solanki] allow him access" led Solanki to believe that he would be issued a citation if he did not accede to those demands. *See id.* at ¶¶ 27, 33 (emphasis added). Similarly, Solanki attests that Grigorian's demands to provide her access to locked areas led him to believe that she would issue him a citation if he refused to comply. *See id.* at ¶¶ 54, 73, 81. Moreover, Solanki permitted Grigorian to access private areas of the property after the February 19, 2016 Office Hearing because Lecavalier threatened to prosecute him if he interfered with an inspection. *See id.* at ¶¶ 73, 81. Solanki may offer such testimony

---

[9] Plaintiffs do not clarify whether they seek recovery for Beeks and Grigorian's warrantless searches of units that had been rented to guests in addition to those units that were closed off and unoccupied. *See, e.g.*, Solanki Decl. at ¶ 24 ("All of the rooms that . . . Beeks demanded to inspect that day were locked and closed to the public *and some of the rooms were unoccupied*.") (emphasis added). [Doc. # 34.] To the extent Plaintiffs allege that their Fourth Amendment rights were violated by Beeks and Grigorian's searches of rooms rented to guests, that claim fails because Plaintiffs did not possess any reasonable expectation of privacy in those areas. *See United States v. Paopao*, 469 F.3d 760, 764 (9th Cir. 2006) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)) (internal quotation marks omitted) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. . . . A lesser expectation of privacy exists in a commercial area than in a residential area."); *Patel*, 798 F.3d at 900 ("*Camara* and *See* only allow a commercial property owner to manifest a reasonable expectation of privacy in his property *by closing off portions of his business to the public*.") (emphasis added).

at trial because it is not clearly and unambiguously irreconcilable with his deposition testimony.  *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009)) (internal quotation marks omitted) ("[T]he inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."). Whether this evidence establishes that Solanki did not freely and voluntarily consent to these inspections is a question of fact for the jury to resolve.  *See Pavao*, 307 F.3d at 918–919 & n.1 (holding that consent is a "factual determination" that requires consideration of "the totality of the circumstances").[10]

Furthermore, although Solanki testified that he asked Beeks to leave the premises on November 23, 2015, *see* Defs.' App'x of Exs., Ex. M at 60:18–25 (Solanki Depo.) [Doc. # 33-2], and he asked Beeks and Grigorian to leave the property on April 29, 2016, *see id.* at 120:5–15, such evidence (at most) undermines Solanki's claim that the consent he gave on other occasions was invalid.  Likewise, at the summary judgment stage, the Court cannot credit Beeks' and Grigorian's declarations that onsite management gave them consent to conduct these inspections.  *See* Grigorian Decl. at ¶ 8 [Doc. # 33-4]; Beeks Decl. at ¶ 10 [Doc. # 33-5].  The Court also cannot make a credibility determination based upon Defendants' evidence of a county policy of attempting to elicit valid consent before conducting an inspection.  *See* Lecavalier Decl. at ¶ 11 [Doc. # 33-3]; Grigorian Decl. at ¶¶ 3–4 [Doc. # 33-4]; Beeks Decl. at ¶¶ 3–4 [Doc. # 33-5]. Because there remains a genuine dispute of fact on this issue, Defendants' motion for

---

[10] Defendants argue that Beeks' "rude attitude" does not amount to a constitutional violation. *See* Reply at 6.  Even if that is true, Solanki attests that Beeks not only had a rude attitude, but he also *demanded* access to private areas of the property.  *See* Solanki Decl. at ¶¶ 27, 33 [Doc. # 39].  Moreover, during one of the inspections, Beeks allegedly shouted at a guest in the course of requesting consent to enter a room.  *See id.* at ¶ 13.  A rational trier-of-fact could conclude that under these circumstances, Solanki did not freely and voluntarily consent to Beeks' inspections of the locked and unoccupied portions of the property.

summary judgment on Plaintiffs' Fourth Amendment claim for warrantless search of the hotel premises is **DENIED**.[11]

## C.  Availability of Punitive Damages Against Individual Defendants

To recover punitive damages, Plaintiffs must show that Defendants' conduct was "oppressive[,] . . . . driven by evil motive or intent, or . . . involved a reckless or callous indifference to the constitutional rights of others." *See Dang*, 422 F.3d at 807 (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993)) (internal quotation marks omitted). As discussed *supra* Part IV.A–B, a reasonable jury could conclude that Defendants Beeks and Grigorian *demanded* to inspect private areas of the Executive Inn and that Defendant Lecavalier *threatened* to prosecute Solanki for attempting to exercise his First Amendment right to appeal an inspection. It is within the province of the jury to determine whether such conduct can give rise to an award of punitive damages against Defendants. *See Dang*, 422 F.3d at 811 (emphasis added) (quoting *Fountila v. Carter*, 571 F.2d 487, 493 (9th Cir. 1978)) (internal quotation marks omitted) ("An act or omission is oppressive . . . if done in a manner which injures or damages or otherwise violates the rights of another person with *unnecessary harshness or severity* as by misuse or abuse of authority or power . . . .").

## V.

## CONCLUSION

In light of the foregoing, the Court issues the following rulings:

1. The Court **GRANTS** summary judgment on Plaintiffs' First Amendment retaliation claims arising out of Lecavalier's alleged threats to refer Solanki to

---

[11] Defendants argue that it is not Lecavalier's "policy" to "instruct any inspector to conduct any inspection without consent or a warrant." *See* MSJ at 20. Assuming *arguendo* the truth of this assertion, the absence of any such a policy does not necessarily absolve Lecavalier of supervisory liability under 42 U.S.C. § 1983. *See Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)) ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.").

criminal prosecution if he interfered with inspections, failed to provide a CAP, or failed to abate alleged violations of county ordinances;

2. The Court **GRANTS** summary judgment on Plaintiffs' First Amendment retaliation claims against Defendants Beeks and Grigorian;

3. The Court **GRANTS** summary judgment on all of Plaintiffs' official capacity claims against Defendants;

4. Defendants' MSJ is otherwise **DENIED**.  The claims remaining for trial are the Fourth Amendment claims against all Defendants as to the searches on November 18, 21, and 22, 2015,  February 25, 2016, and March 24, 2016, and the First Amendment claim against Defendant Lecavalier arising out of her alleged threat to prosecute Solanki if he appealed an inspector's report; and

5. The May 11, 2018 hearing is **VACATED**.

**IT IS SO ORDERED.**

DATED:  May 7, 2018

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE